No. 828

First Circuit

———

DAIGLE v. PRICE

———

(June 16, 1931. Opinion and Decree.)

———

Francis L. Knobloch, of Thibodaux, attorney for plaintiff, appellee.

Harvey Peltier, of Thibodaux, attorney for defendant, appellant.

LeBLANC, J. The plaintiff, Albert Daigle, seeks to recover of the defendant, Mrs. Andrew Price, the sum of $437.50, as a balance he claims to be due for his 1929 crop of sugar cane delivered to her under a contract entered into between them on February 23, 1925, and covering a period of five years.

The contract is signed in duplicate, Mrs. Price being represented therein by her agent, W. H. Price, and one of the copies is annexed to plaintiff's pleadings. Under its provisions, Albert Daigle agreed to sell, for a period of five years, beginning January 1, 1925, "such cane as may be grown on my (his) property," situated in Terrebonne parish. He agrees further to deliver such cane "in the cars of the Acadia Plantation Railroad, at the hoisting station on my (his) property, well cleaned of trash and dirt, properly cut at top, in good condition, sound and unfrozen." Delivery of the cane was to begin as soon as the grinding season commenced at Acadia Factory, and was to continue thereafter at the rate of about one-fiftieth of each year's estimated tonnage of the crop, and Mrs. Price bound herself to place a sufficient number of cars at the hoisting station to take care of the shipments. The price agreed upon was $1 per cwt. based on the price of .96 degree test sugar on the New Orleans market, and an additional ten cents per ton was allowed for loading expenses. On the same day that the contract was signed, Mrs. Price, through her agent, addressed a letter to the plaintiff, in which she states that she will pay a bonus of fifty cents per ton more "as a further encouragement for you (him) to grow more cane and thus enlarge your (his) tonnage for delivery to the Acadia Factory during the life of the contract. * * *"

During the existence of the contract, the defendant discontinued operating the Acadia Factory, after which time, all cane that was to be milled there was ground at the Laurel Grove factory of the Laurel Grove Company, no doubt under some agreement between that company and Mrs. Price, but to which the plaintiff was not a party and was not concerned with. The evidence shows that there had been differences in settling for the crop of 1928, and the testimony of the plaintiff, as well as the correspondence submitted in connection with that matter, shows conclusively that he never intended to, nor did he ever release Mrs. Price from her obligations with him under their contract.

For the crop of 1929, there was a settlement for all cane delivered by the plaintiff at the hoisting station on Acadia plantation, up to December 31, 1929, that settlement having been made without prejudice to the rights of either party.

The contention made by Mrs. Price now is, that the contract having been entered into for a period of five years beginning January 1, 1925, it was terminated on December 31, 1929, and she is not liable for deliveries of cane made after that date.

Aside from what is the commonly understood custom in the sugar business that cane contracts cover what is known as the grinding period, which almost always extends beyond the first of January of the year following that in which harvesting

begins, the contention made in this case seems to be against the very wording of the contract itself. Under its terms, plaintiff was to deliver, beginning January 1, 1925, such cane as may be grown on his property, and that could only mean such cane as was grown during each of the years of the life of the contract. The cane he delivered after January 1, 1930, was cane grown on his property during the year 1929, and certainly was cane meant to be delivered under the contract, and within the contemplation of the parties at the time it was entered into. Had the agreement provided that all the cane produced had to be delivered before January 1, 1930, there might be some merit in the defendant's contention, but, as we read the contract, it is not susceptible of any such interpretation.

As another defense to the action, Mrs. Price pleads the failure of plaintiff to deliver good and merchantable cane as provided for in the contract, urging specifically that it was unsound and frozen. Her counsel also endeavored during the trial to show that it was not free from trash and dirt, but even her own witness admitted that the cane delivered to her was clean.

Considerable testimony was taken regarding the soundness of the cane and whether it was frozen or not, which, far from showing that it was unsound, tends rather to show its good and merchantable quality. What part of the crop was delivered following the freeze referred to as having occurred on December 3, 1929, had been properly windrowed and protected from the cold. The bud may have been killed, but that did not affect the soundness of the cane itself. The mere statement of the witness Eddie Breaux, who was the manager of the Acadia Planting Company, and who accepted the cane of plaintiff for the Laurel Grove Company, that the cane was frozen, is not supported by any other proof whatever. The fact is that all the cane delivered at the hoisting station on the Acadia plantation was accepted and shipped to the Laurel Grove factory, with the exception of one car which is referred to in the testimony as car No. 15, the value of which amounting to $108.35, the Laurel Grove Company deducted in the statement furnished as of December 21, 1929, and against which plaintiff promptly protested. This amount of course, is included in the demand herein made. With reference to that car, the proof is that the cane when loaded and shipped was in as good condition as all the other, but that the car remained on a side switch several days exposed to the weather to which may reasonably be ascribed the bad condition which caused its rejection. For this the plaintiff cannot be held accountable, as he had completed delivery when the cane was loaded at the hoisting station.

In brief before this court, counsel for the defendant further contends that the purchase of the cane was conditioned upon the operation of the Acadia factory. We do not construe the contract as containing any such contingency. Besides, it appears to us to be a bit late to raise such an issue when this defendant had settled for the crop of the previous year which had been ground at the Laurel Grove factory, and had even paid the plaintiff for all the crop involved in this controversy up to December 31, 1929.

The district judge rejected all of the defenses and contentions presented by the defendant, and awarded judgment in favor of the plaintiff for the full amount claimed by him. His judgment is correct, and it is accordingly affirmed.